Filed 4/8/13  DiPietro v. Wachovia Mortgage CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **JAMES DiPIETRO,** | |
| **Plaintiff and Appellant,** | **A134181** |
| v. | |
| **WACHOVIA MORTGAGE, FSB,** | **(Napa County** |
| **Defendant and Respondent.** | **Super. Ct. No. 26-36809)** |

The trial court sustained, without leave to amend, a demurrer filed by defendant Wachovia Mortgage, FSB (respondent), to a complaint filed by plaintiff James DiPietro (appellant).  We affirm.

## BACKGROUND[1]

Appellant is the owner of real property located in Napa County.  In April 2006, appellant received in the mail an offer from defendants Svetlana Conway and Dirk Kuivenhoven to refinance the loan on the house.  At that time, Conway and Kuivenhoven were acting on behalf of defendant Transamerican Financial Corporation—a California corporation performing real estate services by and through a corporate officer licensed as a real estate broker.[2]  Conway presented a proposed loan to appellant that appellant found acceptable.

---

[1]  Because this matter was resolved at the pleading stage of the litigation by way of demurrer, the following summary of the facts is derived from the allegations set forth in appellant's operative complaint.  (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

[2]  Conway, Kuivenhoven, and Transamerican are not parties to this appeal.  Neither is another defendant, Chicago Title Company.

1

Appellant signed certain loan documents at his home with Conway, Kuivenhoven, and a notary present. During the signing, appellant noticed the loan terms were different than those he had agreed upon. Appellant refused to sign any more documents and rejected the loan.

Conway and/or Kuivenhoven forged appellant's signature on the remaining loan documents and completed the loan transaction. The lender was World Savings & Loan, FSB, succeeded by respondent.[3]

Appellant filed second and third amended complaints. The third amended complaint alleged causes of action for cancellation of instrument, quiet title, fraud, negligent misrepresentation, constructive fraud, tortuous breach of a licensee's duties, economic duress, intentional infliction of emotional distress, financial elder abuse, breach of contract, negligent breach of contract, and breach of fiduciary duty. In June 2010, appellant filed a petition seeking relief from creditors under Chapter 13 of the Bankruptcy Code and a notice of automatic stay in the civil case. Appellant sought to remove the action to bankruptcy court and, in June 2011, the bankruptcy court issued an order to remove and retain jurisdiction over appellant's cancellation of instrument and quiet title causes of action, as well as a cross-complaint filed by respondent. The court severed and remanded all the other causes of action to the state court.

Following a court trial, the bankruptcy court entered judgment in favor of respondent. Prior to entry of the bankruptcy court's judgment, appellant had filed a fourth amended and operative complaint (Complaint) in the present action. Following entry of the bankruptcy court's judgment, respondent demurred to the causes of action against it in the Complaint, including cancellation of instrument, quiet title, fraud, negligent misrepresentation, constructive fraud, and financial elder abuse. The trial court sustained the demurrer to those causes of action without leave to amend and entered a judgment dismissing respondent from the action. This appeal followed.

---

[3] Hereafter, the term respondent is used to refer to both World Savings & Loan, FSB, and Wachovia Mortgage, FSB, its successor in interest.

2

DISCUSSION

Appellant maintains the trial court erred in sustaining respondent's demurrer without leave to amend on the ground that the ultimate facts underlying appellant's causes of action for fraud, negligent representation, constructive fraud, and financial elder abuse were previously adjudicated against him in the bankruptcy court, and therefore those claims are barred by the doctrine of collateral estoppel.[4]

"On demurrer a court considers the allegations on the face of the complaint and any matter of which it must or may take judicial notice. [Citation.] If judicially noticed records of prior litigation show the complaint is barred by collateral estoppel, the demurrer may be sustained. [Citations.] On appeal from the judgment of dismissal following the sustaining of the demurrer without leave to amend, we review the order de novo to determine whether as a matter of law the complaint is barred by collateral estoppel. [Citation.]" (*Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667 (*Groves*).)

"Collateral estoppel is one of two aspects of the doctrine of res judicata. In its narrowest form, res judicata ' "precludes parties or their privies from relitigating a *cause of action* [finally resolved in a prior proceeding]." ' [Citations.] But res judicata also includes a broader principle, commonly termed collateral estoppel, under which an *issue* ' "necessarily decided in [prior] litigation [may be] conclusively determined *as [against] the parties [thereto] or their privies* . . . in a subsequent lawsuit on a *different* cause of action." ' [Citation.] [¶] Thus, res judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.) The doctrine is applied " 'only if several threshold requirements are fulfilled. First, the issue sought to be precluded from

---

**4**    Although the trial court's ruling does not use the term "collateral estoppel," the court's reasoning mirrors respondent's collateral estoppel argument below. The trial court also sustained the demurrer as to some of the causes of action on other grounds that we need not and do not address.

3

relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' [Citation.]" (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)

At issue in the present case are the bankruptcy court's findings regarding respondent's knowledge of the fraud perpetrated on appellant. In its memorandum after trial, the bankruptcy court found respondent did not know "that the loan applications submitted by Transamerican were in many cases entirely fictional, with made-up assets and income. These were supposedly signed by the potential borrower, but in fact the signatures were forged by Transamerican employees." The bankruptcy court stated that neither appellant nor respondent were aware of Transamerican's "duplicity" in forging appellant's signature. The bankruptcy court ultimately rejected appellant's equitable claims for loan cancellation and quiet title on the ground that appellant ratified the loan after discovering Transamerican's misconduct. The bankruptcy court explained, "Having heard all of the evidence, the court finds that by his conduct [appellant] has ratified [respondent's] loan so that, whatever rights he may have for damages, the note and deed of trust are fully enforceable. It is clear that within a few days of the loan escrow closing, when [respondent] learned that some of [appellant's] signatures had been forged, it was able to rescind the loan. [Appellant's] own witness established this fact. The evidence also shows that [respondent] was willing to do so. By calling [respondent] and telling them that he was accepting the loan, [appellant] deprived [respondent] of the opportunity to undo the loan and set the parties back to their original positions. He therefore is not entitled to equitable relief to undo the transaction." (Fn. omitted.) The bankruptcy court's judgment quieted title in favor of respondent and stated, "[appellant] will take nothing against [respondent] by the claims not remanded to state court. [Respondent] will have judgment declaring that its note and the above-mentioned deed of trust are fully valid and enforceable . . . ." The judgment also stated it was "without prejudice as to all

4

other claims and defenses [appellant] and [respondent] may have other than those actually decided" in the bankruptcy court's memoradum after trial.

On appeal, appellant fails to frame his arguments in terms of the elements required to justify application of the collateral estoppel doctrine. He does not dispute that the issues of fact in the bankruptcy proceeding were identical to those underlying his fraud and elder abuse claims, that those issues of fact were actually litigated before the bankruptcy court, that the bankruptcy court's decision was final and on the merits, or that the parties in the two proceedings are identical. Neither does appellant dispute that a bankruptcy court's findings can have collateral estoppel effect in a state court action.[5]

Instead, appellant argues the collateral estoppel doctrine does not apply because, even though the evidence presented to the bankruptcy court will also be presented in the state court action, "in upholding the enforceability of the [p]romissory [n]ote and [d]eed of [t]rust, the [b]ankruptcy [c]ourt was concerned only with [a]ppellant's conduct post-close of escrow (i.e., [a]ppellant accepted the proceeds from the loan and notified [respondent] that he would make payments). By contrast, [a]ppellant's remaining damages claims are focused on the conduct of [r]espondent and the other defendants before the close of escrow (i.e., Was [r]espondent engaged in knowingly assisting and financially benefiting from a criminal fraud against [a]ppellant?)." Although not so framed, we construe appellant's argument to be that the bankruptcy court's findings about respondent's lack of knowledge of the fraud perpetrated on appellant were not *necessary* to the bankruptcy court's ruling.[6]

---

[5]  Appellant makes reference to the fact that he had the right to a jury trial on his tort claims and no such right on the equitable claims before the bankruptcy court. We do not, however, understand appellant to argue that precludes application of the doctrine of collateral estoppel. If appellant intended to so argue, the contention has been forfeited due to his failure to present reasoned argument with citations to authority in support of the contention. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).)

[6]  Appellant also contends his claims are not precluded because the bankruptcy court "was careful to specify that his ruling NOT have any effect on the remaining damages claims that were returned to the [trial court] for jurisdiction." However, those claims were not before the bankruptcy court, so it is unsurprising the bankruptcy court did not

It is well established that, where a "court decides the case on one issue, the remaining issues were ' "necessarily decided" ' if they were actually litigated and not ' "entirely unnecessary" ' to the case. [Citation.]" (*People v. Parham* (2003) 111 Cal.App.4th 1178, 1182.) As noted previously, in concluding appellant was "not entitled to equitable relief to undo the transaction," the bankruptcy court emphasized respondent's lack of knowledge of the fraud and willingness to rescind the loan. This demonstrates that the findings at issue were relevant to the equitable considerations involved in appellant's loan cancellation and quiet title actions. (See *Herrington v. Weigel* (1978) 82 Cal.App.3d 676, 687 ["Quiet title actions lie in equity and equitable principles apply [citation]."]; see also *Gonzalez v. Hirose* (1948) 33 Cal.2d 213, 217 [same].) Appellant cites no authority to the contrary. We conclude the bankruptcy court's findings regarding respondent's knowledge of the fraud perpetrated on appellant were not entirely unnecessary to the court's ruling.

Because the requirements for application of the collateral estoppel doctrine are satisfied and appellant has not shown there is a basis to decline to apply the doctrine, the trial court properly sustained respondent's demurrer without leave to amend. (*Groves*, *supra*, 100 Cal.App.4th at p. 667.)[7]

## DISPOSITION

The trial court's judgment is affirmed. Costs on appeal are awarded to respondent.

---

purport to resolve them. Moreover, the bankruptcy court's memorandum after trial states that appellant's complaint was not part of the record, so the court could not confirm that the state court claims were based on the same underlying issues of fact. In any event, appellant presents no reasoned argument or citation to authority why the bankruptcy court's statements preclude the application of the collateral estoppel doctrine if the ultimate issues of fact were actually and necessarily litigated in the bankruptcy court. Appellant's argument requires no further consideration from this court. (See *Badie*, *supra*, 67 Cal.App.4th at pp. 784-785.)

[7] We deny respondent's August 2, 2012 motion for judicial notice as unnecessary to our decision.

SIMONS, J.

We concur.

JONES, P.J.

BRUINIERS, J.